20863

FEDERAL DEPOSIT INSURANCE CORPORATION, Appellant, v. Stancel E. KIRKLAND, Respondent.

(251 S. E. (2d) 750)

*J. Randolph Pelzer,* North Charleston, and *Charles H. Gibbs* of *Sinkler, Gibbs & Simons,* Charleston, *for appellant.*

*Henry H. Taylor* and *S. Jahue Moore* of *Kirkland, Taylor, Wilson & Moore,* West Columbia, *for respondent.*

January 29, 1979.

Lewis, Chief Justice:

Among the assets coming into the hands of appellant, Federal Deposit Insurance Corporation, as the result of the closing of American Bank and Trust Company, was a note in the amount of $127,700.00, signed by Cecil Development Company, Inc., Anthony P. Cecil, and respondent, Stancel E. Kirkland, and secured by a mortgage from Cecil Develop-

ment Company over certain real property on Hilton Head Island. The note was in default and appellant brought this action to collect the indebtedness through foreclosure of the mortgage and a deficiency judgment against the signers of the note. The findings of the Special Referee, to whom the issues were referred, that respondent Kirkland was liable for any deficiency on the note or indebtedness, was reversed by the lower court and this appeal followed.

This appeal involves the liability, if any, of respondent on the note. Respondent contends that he was an accommodation endorser on the note and was thus discharged due to the failure of American Bank and Trust to make presentment of the note and to give him notice of dishonor. Additionally, respondent claimed that he was discharged by reason of impairment of the collateral for the loan. We think that respondent was liable on the note and, accordingly, reverse.

In April 1973, American Bank and Trust Company made a construction loan to Cecil Development Company, Inc., to build a house on Hilton Head Island. Respondent Kirkland was an officer in the Development Company and owned 30% of the outstanding stock. In addition respondent served as the company's attorney.

The note evidencing the construction loan was signed by Cecil Development Company, Inc., and "individually," by respondent, Wilbur McLeod, and Anthony P. Cecil. In 1974, when the house was still incomplete, respondent and Cecil negotiated a renewal loan with American Bank and Trust in the amount of $127,700.00. Respondent prepared the note evidencing the renewal loan and signed it; the pertinent part was as follows:

For value received, Cecil Development Company, Inc., promised to pay to American Bank and Trust or order, the sum of one hundred twenty-seven thousand seven hundred

. . . dollars, principal and interest due and payable April 3, 1974.

> Cecil Development Company, Inc.
> By: s/ Anthony P. Cecil
> Anthony P. Cecil, President
> s/ Anthony P. Cecil
> Anthony P. Cecil, Individually
>
> _____
>
> Stancel E. Kirkland, Individually
> s/ Stancel E. Kirkland

The renewal note was due on April 3, 1974. However, on that date American Bank and Trust, Cecil Development Company, and the respondent agreed to extend the loan for an additional ninety (90) days. Although the renewal note was not paid when due, American Bank and Trust did not present the note to Cecil Development Company, nor did it give written notice of dishonor to respondent. Respondent concedes in his brief that he had "actual knowledge of default" in the payment of the note and that the maker would be unable to pay.

Subsequent to default in the payment of the note, American Bank and Trust cooperated in efforts to sell the property in order to pay the note and advanced about $1,000.00 to Cecil Development Company for the purpose of putting the property in condition for sale.

On July 25, 1974, about three weeks after the note became past due, the Board of Directors of Cecil Development Company, at a meeting held in the office of respondent in Columbia, South Carolina, authorized the procurement of an additional loan of $5,000. This additional loan was obtained from American Bank and Trust, secured by a subordinate mortgage on the property. American Bank and Trust made no subsequent extensions of the loan and efforts to sell the property were unsuccessful. During the time the property was being offered for sale, some vandalism occurred.

Although respondent signed the note in question in the lower right hand corner where a maker normally signs, both the referee and the trial judge concluded, and we agree, that respondent was an endorser and not a maker. The issues are accordingly determined in the light of respondent's status as an endorser of the note.

It is undisputed that neither presentment for payment ▮ nor notice of dishonor was made upon respondent when the note became due. Such failure would ordinarily discharge an endorser (here the respondent). Section 36-3-501, 1976 Code of Laws. However, Code Section 36-3-511(2)(b) provides that presentment and notice of dishonor is entirely excused where the endorser "has no reason to expect . . . that the instrument . . . [will] be paid . . ."

Respondent in this case knew that the note was not paid and that the maker, Cecil Development Company, would not pay the note. He, therefore, had full knowledge of everything that the notice of dishonor could possibly have given him. Under these circumstances, Section 36-3-511(2)(b) applied and rendered presentment and notice of dishonor unnecessary to charge respondent as endorser. *Bewley-Darst Coal Co. v. Laurens Gin & Fuel Co.,* 126 S. C. 219, 119 S. E. 589; *Martin v. Traxler Real Estate Co.,* 140 S. C. 505, 139 S. E. 165.

The lower court further held that respondent was ▮ discharged from liability on the note because of an extension of time given by American Bank and Trust to Cecil Development Company without respondent's consent, relying upon Code Section 36-3-606, which reads in part as follows:

The holder discharges any party to the instrument to the extent that without such party's consent the holder . . . releases or agrees not to sue . . . or agrees to suspend the right to enforce . . . the instrument.

The foregoing holding is apparently based upon the fact that, after the note came due on July 2, 1974, American

Bank and Trust advanced to Cecil Development 'Company an additional sum of $1000.00 and did not commence suit to collect the note until September 1975, about fourteen (14) months later.

We need not pursue the legal inquiry into the effect upon the liability of an endorser of an agreement by the holder of a note to an extension without the endorser's consent; for the record in this case is devoid of any evidence to sustain the conclusion that an additional extension of time was granted. The advance of additional funds was made solely for the purpose of putting the property in the best condition for sale.

As an additional sustaining ground, respondent contends that Code Section 36-3-606(1)(b) relieves him from liability. This section states that the holder discharges any party to the instrument to the extent the holder unjustifiably impairs any collateral for the instrument. Basically, respondent contends that collateral was impaired due to vandalism on the mortgaged property and a general decline in real estate values in the area. The referee correctly held that any damage from vandalism or deterioration in values did not result from any act of appellant and, therefore, it was not responsible therefor.

We conclude that the referee correctly decided the issues and that his recommendations should be approved. The order under appeal is accordingly reversed and the cause remanded to the lower court for entry of judgment in accordance with the recommendations of the referee.

LITTLEJOHN and RHODES, JJ., and LOUIS ROSEN, Acting Associate Justice, concur.

NESS and GREGORY, JJ., not participating.